CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 05 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

JANIE MCFARLAND, )
 ) Civil Action No. 3:15CV00016
    Plaintiff, )
 ) **MEMORANDUM OPINION**
v. )
 ) Hon. Glen E. Conrad
CHAXU, INC. d/b/a ) Chief United States District Judge
CHARLOTTESVILLE SUPER 8 MOTEL, )
 )
    Defendant. )

In this negligence action, Janie McFarland, who is proceeding pro se, contends that she sustained personal injuries as a result of being bitten by bed bugs while staying as a guest at the Charlottesville Super 8 Motel ("the Motel"). The case is presently before the court on the parties' cross-motions for summary judgment on the issue of liability, and the Motel's supplemental motion for summary judgment on the issue of punitive damages. For the reasons set forth below, the parties' cross-motions for summary judgment on the issue of liability will be denied, and the Motel's supplemental motion for summary judgment on the issue of punitive damages will be granted.

### Background

The following facts from the summary judgment record are either undisputed or presented in the light favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013).

On Saturday, September 13, 2014, McFarland, her mother, and approximately 50 other people traveled on a bus, privately chartered by their church, from Amityville, New York to

Charlottesville, Virginia. The group stayed overnight at the Motel, which is owned and operated by Chaxu Mehta.

McFarland and her mother were assigned to room 107. After seeing the condition of the floor and the bathtub, they attempted to move to another room. However, there were no other rooms available. Since they were only going to be in Charlottesville for one night, they elected to keep their assigned room, which contained two beds.

In the middle of the night, McFarland awoke twice from intense itching. By morning, the itching had worsened. When McFarland got out of bed, she noticed that her pillow was stained with blood. Upon pulling back the sheets on her bed, she saw at least 50 bed bugs "leaping" and "crawling everywhere." McFarland Dep. Tr. 54, 59.

McFarland killed several of the bed bugs with a napkin and showed them to Desiree Scott, an employee of the Motel who was working at the front desk. Scott kept the napkin containing the bed bugs and advised McFarland that the Motel would inspect the room after she checked out that morning.

When McFarland returned to her room, she pulled back the covers on her mother's bed and found bed bugs crawling near the foot of the bed. Using her cell phone, McFarland took photos of the bug bites on her body and recorded video footage of the beds.

On Monday, September 15, 2014, after returning to New York, McFarland obtained medical treatment for the bug bites. That same day, Scott called McFarland and confirmed that bed bugs had been found in room 107. Scott indicated that the dust ruffle on the bed in which McFarland had slept was "infested" with the bugs, and that the Motel was going to "take the room out of commission." McFarland Dep. Tr. 133; see also id. ("[T]hey had festered – the word she

used -- they had festered in the dust ruffle."). Scott further advised that the Motel was going to refund the amount paid for the room.

During her deposition, McFarland was asked whether she saw any bed bugs when she initially pulled back the covers on her bed. McFarland responded in the negative, but noted that she "[d]idn't think to even look for anything." Id. at 51.

Prior to McFarland's stay, Orkin Pest Control regularly treated the Motel's cracks and crevices to prevent the entry of ants and roaches. In response to McFarland's complaints, the Motel arranged for Orkin to treat room 107 for bed bugs "as a preventative measure." Mehta Affid. ¶ 4. The Motel maintains that it had no knowledge of bed bugs being present in the room at any time prior to McFarland's complaints.

## Standard of Review

The case is now before the court on the parties' cross-motions for summary judgment. An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Libertarian Party of Va., 718 F.3d at 313. "When faced with cross-motions for summary judgment, [courts] consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Bacon v. City of Richmond, 475 F.3d 633, 636-37 (4th Cir. 2007). "The court must deny both motions if it finds that there is a genuine dispute of material fact, but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." Sky Angel U.S., LLC v. Discovery

Commc'ns., LLC, 95 F. Supp. 3d 860, 869 (D. Md. 2015) (internal citation and quotation marks omitted).

## Discussion

Both sides have moved for summary judgment on the issue of liability. The Motel has also moved for summary judgment on the issue of punitive damages. The court will address each issue in turn.

### I. Liability

McFarland asserts a claim for negligence against the Motel. Under Virginia law, which applies in this diversity case, "[a]ll negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to another person." Steward v. Holland Family Props., LLC, 726 S.E.2d 251, 254 (Va. 2012). "In every case, it is for the court to determine, as a question of law, from all the circumstances, if it is controverted, whether the plaintiff falls within the class of those to whom the defendant owes a duty." Dudley v. Offender Aid & Restoration of Richmond, Inc., 401 S.E.2d 878, 883 (Va. 1991). "If that question is answered affirmatively, it is for the jury, properly instructed, to determine as an issue of fact whether the defendant breached the duty." Id.

Under the common law of Virginia, a "special relationship" exists between an innkeeper and a guest. Taboada v. Daly Seven, Inc., 626 S.E.2d 428, 435 (Va. 2006). Although an innkeeper is not an "absolute insurer" of its guests' personal safety, an innkeeper owes its guests an "elevated" duty of care. Id. at 434. This duty requires innkeepers "to use the utmost care and diligence of very cautious persons; and they will be held liable for the slightest negligence which

human care, skill and foresight could have foreseen and guarded against."* Id. (internal citations omitted). The rationale underlying this principle is that "the guest of an innkeeper entrusts his safety to the innkeeper and has little ability to control his [or her] environment." Id.

"Like other property holders, an innkeeper's duty to use reasonable care in maintaining its property 'encompasses the duty to make reasonable inspections to determine if and when repairs are needed.'" Jarmak v. Ramos, 497 F. App'x 289, 292 (4th Cir. 2012) (quoting Gumenick v. United States, 193 S.E.2d 788, 795 (Va. 1973)). Whether or not an innkeeper used reasonable care in making inspections "depends upon the facts and circumstances in each case and upon the evidence adduced." Gumenick, 193 S.E.2d at 795.

"Because an innkeeper owes a duty of care to its guests to inspect and discover unsafe conditions, it can be held liable to a guest under the theory of constructive notice." Jarmak, 497 F. App'x at 293 (citing Kirby v. Moehlman, 30 S.E.2d 548, 551 (Va. 1944)). Thus, if the defect was noticeable and had existed for a sufficient length of time such that it would have been discovered by the exercise of reasonable diligence, an innkeeper can be held responsible for it. Id.; see also Grim v. Rahe, Inc., 434 S.E.2d 888, 890 (Va. 1993) ("[C]onstructive knowledge or notice . . . may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition."). The plaintiff has the burden of proving constructive notice. Revell v. Deegan, 65 S.E.2d 543, 546 (Va. 1951). "Although

---

* This heightened duty of care is governed by the common law, even though Virginia Code § 35.1-28, cited by McFarland, requires "any person owning or operating a hotel to . . . take reasonable precautions to protect the persons and property of the guests of the hotel." See Va. Code § 35.1-28(A). As the Supreme Court of Virginia noted in Taboada, § 35.1-28 "makes plain that the duties prescribed, and the limitation of liability afforded, by the statute do not 'change or alter the principles of law concerning a hotel's liability to a guest . . . for personal injury.'" Taboada, 626 S.E.2d at 432 (quoting Va. Code § 35.1-28(E)). Accordingly, with respect to the specific facts of this case, the duty of care owed to McFarland by the Motel is not governed by the provisions of the statute. Instead, it "remains governed by the common law." Id.

5

constructive notice cannot be established by mere speculation, it is usually, if not always, established by circumstantial evidence." Jarmak, 497 F. App'x at 293.

Applying these principles, the court holds that a genuine issue of material fact exists regarding whether the Motel should be charged with constructive notice of the presence of bed bugs in room 107. This holding precludes summary judgment for either side on the issue of liability.

In light of the Motel's heightened duty of care, the court first concludes that a jury question exists as to whether the Motel adequately inspected room 107 before it was assigned to McFarland and her mother. It is common knowledge that bed bug infestations are on the rise in the United States. See, e.g., Mathias v. Accor Econ. Lodging, Inc., 347 F.3d 672, 673 (7th Cir. 2003) (observing more than ten years ago that bed bugs were "making a comeback in the U.S."). Although the reports from Orkin indicate that the Motel's cracks and crevices were treated for ants and roaches on a regular basis, there is no indication that Orkin inspected the rooms for bed bugs at any time prior to September 13, 2014. Likewise, there is no evidence that the Motel inspected room 107 before it was assigned to McFarland. Based on the current record, the court is unable to conclude, as a matter of law, that the Motel satisfied the duty of care owed to McFarland. This issue must be decided by a jury on the basis of the evidence presented at trial.

The court's conclusion in this regard "does not, however, end the analysis because 'a negligent failure to inspect does not result in the imposition of liability unless it is established that a reasonable inspection would have disclosed the presence of the defect which caused the harm.'" Jarmak, 497 F. App'x at 294 (quoting United States v. Moran Towing & Transp. Co., 409 F.2d 961, 963 (4th Cir. 1969)). In determining whether a defendant had constructive notice of a defect, the "crucial inquiry" is the defect's "'susceptibility to discovery and the length of time the defect

may exist that would be sufficient to charge [the defendant with] notice.'" Id. (quoting City of Richmond v. Hood Rubber Prods. Co., 190 S.E. 95, 100 (Va. 1937)). Accordingly, McFarland must establish that the bed bugs were present for a sufficient period of time before the room was assigned to her and would have been detected upon an adequate inspection. Id.

Based on the current record, the court concludes that a triable issue of fact exists as to whether the Motel had constructive notice of the presence of bed bugs in room 107. According to McFarland's evidence, the dust ruffle on her bed was infested with bed bugs, at least 50 bed bugs were ultimately found on top of her bed, and other bed bugs were found in the bed on which her mother slept. Construing the record in the light most favorable to McFarland, a reasonable jury could find that the bed bugs were present for a sufficient period of time prior to McFarland's arrival and that an adequate inspection of the room would have revealed their presence. While McFarland is not entitled to judgment as a matter of law, her evidence is sufficient to withstand the cross-motion for summary judgment filed by the Motel.

In moving for summary judgment on this issue, the Motel places great weight on the fact that McFarland did not see any bugs in her bed before she went to sleep on September 13, 2014. However, unlike the Motel, "who had an elevated duty of care as an innkeeper," McFarland "had no duty under Virginia law to inspect the [bed] before [getting] in it," and her deposition testimony makes clear that she did not closely examine the bed before going to sleep. Jarmak, 497 F. App'x at 294-95; see also McFarland Dep. Tr. 51 (noting that she "[d]idn't think to even look for anything" under the covers). Accordingly, McFarland's deposition testimony in this regard is not determinative at this stage of the proceedings.

In sum, the evidence in the record, viewed in the light most favorable to McFarland, does not establish as a matter of law that the Motel met its duty as an innkeeper to inspect room 107

before assigning it to McFarland. Moreover, a triable issue of fact exists as to whether the Motel had constructive notice of the presence of bed bugs in the room. Accordingly, neither side is entitled to summary judgment on the issue of liability.

**II.    Punitive Damages**

The Motel has also moved for summary judgment on the issue of whether the plaintiff is entitled to recover punitive damages. Under Virginia law, "an award of punitive damages is not favored generally because punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct." Bowers v. Westvaco Corp., 419 S.E.2d 661, 668 (Va. 1992). A plaintiff who seeks to recover punitive damages "must present evidence that the defendant's acts were 'so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct . . . .'" Id. (quoting Booth v. Robertson, 374 S.E.2d 1, 3 (Va. 1988)). The Supreme Court of Virginia has described the type of conduct which would support an award of punitive damages. Specifically,

> . . . it must be shown that [the defendant] was conscious of his conduct and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result.

Infant C. v. Boy Scouts of Am., 391 S.E.2d 322, 327 (Va. 1990) (quoting Thomas v. Snow, 174 S.E. 837, 839 (Va. 1934)).

Applying these principles, the court concludes that the Motel is entitled to summary judgment on McFarland's request for punitive damages. While McFarland's evidence, construed in her favor, may support a claim for ordinary negligence, it would not support an award of punitive damages by a reasonable jury. Simply stated, the actions by the Motel do not rise to the level of malicious, reckless, or egregious behavior required to support a claim for punitive

8

damages under Virginia law. Accordingly, the Motel's supplemental motion for summary judgment on this issue will be granted.

## Conclusion

For the reasons stated, the parties' cross-motions for summary judgment on the issue of liability will be denied, and the defendant's supplemental motion for summary judgment on the issue punitive damages will be granted. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This 5th day of April, 2016.

_____
Chief United States District Judge